IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEANETTE REDDICK,<br>*Plaintiff* | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| BURLINGTON STORE, INC., *et al.*<br>*Defendant* | : <br> : <br> : | No. 21-5075 |

## MEMORANDUM

PRATTER, J.                                                                                                DECEMBER 21, 2021

### INTRODUCTION

While removal from state court to federal court is relatively common, the removing party must always meet its burden to keep the case in federal court. Here, the removing party did not fully button up its removal. Therefore, the Court grants Plaintiff Jeanette Reddick's motion to remand.

### BACKGROUND

This case comes to this Court, ever so briefly, from Plaintiff Jeanette Reddick's original claim in the Court of Common Pleas for Philadelphia County. Ms. Reddick's case stems from a fall in the Burlington Coat Factory ("Burlington") located in the Pavilion Shopping Plaza of Jenkintown, Pennsylvania. On May 9, 2021, Ms. Reddick allegedly fell while attempting to board the escalator inside Burlington due to an uneven walking surface or some dangerous condition on the landing platform around the escalator. As a result of this fall, Ms. Reddick allegedly suffered serious injuries.

1

Ms. Reddick commenced her action in the Court of Common Pleas on September 8, 2021 against a litany of defendants. Burlington timely filed a notice of removal in federal court. Ms. Reddick then filed the motion to remand the case to the Court of Common Pleas. Burlington responded to Ms. Reddick's motion, Ms. Reddick filed her reply, and Burlington then filed its sur-reply, leaving the motion ripe for the Court's resolution.

For the reasons that follow, the Court grants Ms. Reddick's motion to remand.

## LEGAL STANDARD

As a general rule, a party may remove a civil action filed in state court to federal court if the federal court would have had original jurisdiction to hear the matter. 28 U.S.C. § 1441(a). But a case "otherwise removeable solely on the basis of" diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). The Third Circuit Court of Appeals has interpreted § 1441(b)(2) literally, meaning that the forum defendant rule only precludes a federal court from exercising removal jurisdiction if the potential forum state defendant has been both "properly joined *and* served." *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) (emphasis added); *see also Mendoza v. Ferrro*, 18-cv-3807, 2019 WL 316727, at *2 (E.D. Pa. Jan. 24, 2019) ("Any defendant, forum or non-forum, may remove an action as long as the forum state defendant has not yet been properly served.").[1]

Assuming that the forum state defendant has been properly served, a federal court must analyze whether the forum state defendant was properly joined. 28 U.S.C. § 1441(b)(2). "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal

---

[1] The parties do not contend that the forum defendants were not served or were improperly served. As to Defendant Galman, upon which the Court finds sufficient basis to grant Ms. Reddick's motion, Ms. Reddick provided proof of service. Doc. No. 3-1, Pl.'s Ex. A.

2

question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992).

A party is fraudulently joined "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991) (internal quotation omitted). "A district court must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Id.* "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* (internal quotation omitted). The removing party carries a "heavy burden of persuasion" in showing that a non-diverse party was fraudulently joined. *Batoff*, 977 F.2d at 851; *Boyer*, 913 F.2d at 111.

When making such a determination, the Court "focus[es] on the plaintiff's complaint at the time the petition for removal was filed. . . [and] must assume as true all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). The court may also "look beyond the complaint, but only to the extent that it bears on the threshold jurisdictional inquiry." *Reto v. Liberty Mut. Ins.*, No. CV. A. 18-2483, 2018 WL 3752988, at *2 (E.D. Pa. Aug. 8, 2018) (citing *In re Briscoe*, 448 F.3d 201, 218 (3d Cir. 2006)). The provisions of the removal statute "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Batoff*, 977 F.2d at 851 (internal quotation omitted). It is well settled that "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all

3

stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

## DISCUSSION

This case originates from Ms. Reddick's alleged fall in Burlington's store. Ms. Reddick alleges that, while shopping inside the store, she tripped and fell due to a dangerous condition in or around the escalator and escalator landing platform. She claims that this condition was clearly visible and had existed for a long enough period of time that all named defendants would have been aware of it. As a result of this fall, Ms. Reddick alleges that she suffered serious injuries, ongoing pain and suffering, and possibly a permanent injury, for all of which Ms. Reddick continues to incur medical expenses. Ms. Reddick sued a host of defendants including, as relevant here, the landlord and the property manager of the premises.

As to the landlord, Ms. Reddick sued Trestle Partners LP, the entity that originally leased Burlington's space to Burlington in The Pavilion. Trestle is a limited partnership incorporated in Pennsylvania. In Burlington's notice of removal, however, Burlington noted that Bridge Unit Acquisition L.P. ("Bridge") became and is now Burlington's landlord as of April 2016. As a result, Ms. Reddick notes her intention to add Bridge as a defendant. Bridge Unit Acquisition L.P. is also incorporated in Pennsylvania. Because the Court's decision in this motion to remand does not turn on the identity of the landlord and because Burlington assumes for the purposes of the motion that Ms. Reddick has already substituted Bridge as the landlord, the Court will refer only to the "landlord" throughout this opinion for the sake of simplicity.

As to the property manager, Ms. Reddick sued The Galman Group ("Galman"). Ms. Reddick notes that Galman actively advertises that it is the manager of The Pavilion. Galman is also incorporated in Pennsylvania and, thus, a Pennsylvania citizen.

4

Upon learning that the Ms. Reddick was demanding more than $75,000 in damages, Burlington timely removed this case to federal court. Despite the fact that Ms. Reddick is a Pennsylvania citizen and both the landlord and Galman are Pennsylvania citizens, Burlington invoked the court's diversity jurisdiction and removed the case to federal court. Burlington argues that "there is no basis in fact or colorable ground supporting Plaintiff's claims against [the landlord] and/or Galman" and that Ms. Reddick "has no real intention in good faith to prosecute the action against them or seek a joint judgment." Doc. No. 1 ¶ 31. In other words, Burlington claims Ms. Reddick has fraudulently joined the landlord and Galman.

Ms. Reddick has moved to remand the case to state court, arguing that both the landlord and Galman destroy diversity. Burlington responded that Burlington's lease contract for the store in Jenkintown forecloses Ms. Reddick's argument as to *both* the landlord and Galman as the property manager. Burlington notes that under its lease, it is solely responsible for making all repairs to nonstructural elements of the store, "which elements necessarily include the escalator." Doc. No. 6 at 4. Further, Burlington notes the indemnity agreement as part of the lease, in which Burlington agrees to indemnify the landlord for all injuries occurring within the Burlington store, with an exception for "injuries arising out of acts or omissions of Landlord." *Id.* Burlington, in other words, asserts that under the "landlord out of possession" doctrine, the landlord cannot be held liable for any of Ms. Reddick's claims. Burlington further claims that all of these same arguments also apply to Galman as the property manager.

Ms. Reddick replied to Burlington's argument that she had fraudulently joined Galman and the landlord. Ms. Reddick posits two reasons as to why Burlington's argument is faulty. First, Ms. Reddick claims that Burlington failed to address why Galman was improperly joined as a defendant. Second, Ms. Reddick argues that the public use exception to the landlord out of

5

possession rule applies. Under this exception, if the landlord leased the premises to be open to the public and failed to inspect the dangerous condition prior to the transfer of the property, the landlord may still be held liable.

Burlington filed its sur-reply, arguing that the public use exception does not apply and that, even if it were to apply, Ms. Reddick's complaint does not adequately allege the existence of the condition prior to the landlord leasing it to Burlington. Again, Burlington claims that "everything that Burlington has argued about the Landlord is equally true of the Property Manager, The Galman Group." Doc. No. 8, at 2.

Cutting through all of these outer layers, the Court agrees with Ms. Reddick that Burlington failed to carry its burden.

## I. Burlington Failed to Carry Its Burden as to Galman

Burlington failed to carry its "heavy burden of persuasion" in this case. Burlington focused its briefing on the relationship between Burlington and the landlord. Indeed, Burlington provided a great deal of documentary evidence, including its lease and amended lease, to make its argument. Relying primarily on the repairs and indemnity provisions of its lease, Burlington argues that it was entirely responsible for the care and maintenance of the escalator and thus neither the landlord nor Galman could be held liable under any theory. Burlington also relies on the "Vertical Transportation Maintenance Agreement" that it signed with Excel Elevator and Escalator Corporation ("Excel"). Burlington uses this agreement to again demonstrate that Burlington, and only Burlington, was responsible for the maintenance and care of the escalator at the time of Ms. Reddick's fall. But Burlington's argument falls short.

Most simply, Burlington has failed to explain why the lease agreement or the vertical transportation agreement affect Ms. Reddick's claim against Galman. Burlington only provides a

6

series of conclusory assertions that the same argument as to the landlord applies equally to Galman. For example, in its initial notice of removal, Burlington states only that Galman was fraudulently joined and should not defeat removal but provides no reason *why* that is the case. Similarly, in its response to Ms. Reddick's motion to remand, Burlington again only states "[t]he documentary evidence establishes that the Landlord and manager of the shopping center do not control or maintain the demised premises inside the Burlington store where Plaintiff allegedly fell." Doc. No. 6, at 1. To support that claim, Burlington again cites to the lease between the landlord and Burlington, without ever explaining how that lease affects the relationship between Burlington and Galman. Finally, in its sur-reply, Burlington claims "everything that Burlington has argued about the Landlord is equally true of the Property Manager, The Galman Group." Doc. No. 8, at 2. And again, Burlington does not explain *why* that is true.

Because Burlington does not explain *why* these arguments *ipso facto* apply to Galman, the Court is left unable determine why all of the arguments about Burlington's landlord and the lease automatically apply to Galman. This may, in fact, be a rather simple argument or explanation, perhaps so simple that Burlington assumed it was obvious to the Court. But the Court cannot don Burlington's coat and weave arguments for it.

In sum, Burlington, as the removing party, has not carried its "heavy burden of persuasion" to show that Ms. Reddick fraudulently joined Galman. *Batoff*, 977 F.2d at 851; *Boyer*, 913 F.2d at 111. Indeed, the provisions of the removal statute "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Batoff*, 977 F.2d at 851 (internal quotation omitted). Therefore, Ms. Reddick's motion to remand is successful on this ground alone. The Court will, however, briefly analyze Burlington's other arguments to demonstrate why they too hem Burlington in.

7

## II. The Lease Agreement Does Not Prove the Landlord was Fraudulently Joined

Burlington's reliance on the lease agreement is overstated. The same lease that Burlington attached to demonstrate why the landlord and Galman could not be liable under any theory undercuts Burlington's own argument. The lease also includes Article 28, "Landlord's Pre-Opening Construction Obligations," in which the lease clearly states, "Landlord's Work shall include. . . the vertical transportation systems, including two elevators and two escalators, shall be repaired and be in good operating condition and in compliance with all Legal Requirements." Doc. No. 1-2, Def.'s Ex. B, at 23.

Omitting this portion of its lease, Burlington claims that Ms. Reddick's complaint is insufficient to allege that the landlord had any responsibility for the condition of the escalator at the time of Ms. Reddick's fall. In Ms. Reddick's complaint, she states that the "dangerous condition was open and visible to the Defendants, and existed for a sufficient length of time prior to the aforesaid occurrence for the Defendants to have had actual and constructive knowledge thereof." Doc. No. 1-1 ¶ 16. Burlington argues that these factual allegations are too conclusory to suffice. But Burlington's argument here fails for two separate reasons.

First, Burlington's argument, at bottom, asks this Court to engage in the sort of analysis it would do at the motion to dismiss stage. But this is a motion for remand. In analyzing a motion for remand, the Court "focus[es] on the plaintiff's complaint at the time the petition for removal was filed. . . [and] must assume as true all factual allegations of the complaint." *Steel Valley Auth.*, 809 F.2d at 1010. Further, the Court "must resolve all contested issues of substantive fact in favor of the plaintiff." *Boyer,* 913 F.2d at 111. Considering the lease provision stating that the landlord would fix the very thing Ms. Reddick claims caused her injury and her allegation that it has been present for a while, the Court must assume that to be true *at this stage.*

Second, Burlington's factual basis for rejecting Ms. Reddick's claim on this issue is just as weak, if not weaker, than it claims Ms. Reddick's factual allegations to be. Burlington only states that Ms. Reddick's claim on this point "would appear unlikely." Doc. No. 8, at 2. Unfortunately for Burlington, the Court cannot deal in these kinds of probabilities.

### III. The Vertical Transportation Agreement Does Not Prove Burlington Is Solely Responsible for the Maintenance of the Escalator

Third and finally, the vertical transportation agreement also does not do the work that Burlington claims it does. In its notice of removal, Burlington asserts that the vertical transportation agreement between it and Excel demonstrates Burlington's contractual obligation to maintain the escalators.

But again, Burlington did not meet its high burden. The vertical transportation agreement expressly says, "Term of this agreement shall be three years from October 1, 2016 through September 30, 2019. . . the agreement will continue on a month-to-month basis until cancelled in writing by either party with 30 days' notice." Doc. No. 1-4, Def.'s Ex. D, at 1. Ms. Reddick's fall took place in May 2021. Burlington has provided no evidence that this agreement was still in effect almost two full years after it would turn into a month-to-month agreement between the parties. It may very well be the case that Burlington and Excel remained in a month-to-month relationship in May 2021. Or perhaps they were not. How is the Court to know?

In sum, Burlington has failed to carry its "heavy burden of persuasion" to show that Ms. Reddick fraudulently joined Galman and/or the landlord in an effort to prevent federal jurisdiction. *Batoff*, 977 F.2d at 851; *Boyer*, 913 F.2d at 111.

## CONCLUSION

For the foregoing reasons, the Court grants the motion to remand. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE
